**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **vs.** | : | **Cr. No.  05-709-01** |
| | : | |
| **JOHN PURCELL** | : | **Civ. No. 08-473** |

**M E M O R A N D U M**

**DUBOIS, J.**                                                     **OCTOBER 21, 2009**

**I.      INTRODUCTION**

Defendant John Purcell was convicted by a jury trial of one count of conspiracy to manufacture and distribute methamphetamine, in violation of 21 U.S.C. § 846, and one count of manufacturing methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2. At sentencing, the Court imposed a twenty-year sentence, the mandatory minimum sentence for the offenses.

Presently before the Court are two *pro se* motions[1] filed by defendant. The first, a Motion to Vacate, Set Aside, and/or Correct Sentence, and Authority in Support Thereof, Brought in Accordance with 28 U.S.C. § 2255 ("§ 2255 motion"), was filed on January 31, 2008 and raises two ineffective assistance of counsel claims. With regard to the first claim, defendant argues two related issues: (1) that counsel was ineffective for advising him that he would receive a sentence of twenty (20) years or more regardless of whether he pled guilty, which advice was allegedly incorrect to the extent that the government's withholding of an Information under 21 U.S.C.

---

[1] Although the motions were filed by defendant *pro se*, the Court later appointed counsel to represent defendant.

§ 851,[2] with or without a plea agreement, would have avoided the twenty-year mandatory minimum sentence arising from defendant's prior convictions, and (2) that counsel was ineffective for failing to pursue plea negotiations based on the government's withholding of a § 851 Information.[3] Defendant's second claim alleges that counsel was ineffective for failing to communicate with him regarding the filing of a notice of appeal.

On April 8, 2008, following the filing of the government's response to his § 2255 motion, defendant filed the second motion, a *pro se* Motion for Discovery, Pursuant to Rule 6(a) of the Rules Governing Section 2255 Proceedings ("Discovery Motion"). In the latter motion, defendant requests discovery on other cases in which the government did not file § 851 Informations even though the defendants were eligible for enhanced penalties. On June 2, 2008, defendant, through counsel, filed a Supplemental Memorandum in Support of his Motion for Discovery. In that filing, defendant requested additional discovery, specifically "any and all memoranda, handbooks and other writings detailing the government's policies concerning the filing of § 851 Informations, and any and all memoranda, notes or other writing concerning plea discussions or the filing of § 851 Information in the underlying matter." (Supp. Disc. Memo. 1.)

The Court held a hearing on February 24, 2009. Upon consideration of the evidence presented at that hearing and the arguments of counsel, for the reasons set forth below, the Court

---

[2] Under 21 U.S.C. § 851, "[n]o person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless, before trial, or before entry of a plea of guilty, the United States attorney files an information with the court . . . stating in writing the previous convictions to be relied upon." The statutes under which the defendant was convicted—21 U.S.C. § 841(a)(1), (b)(1)(A) and 21 U.S.C. § 846—are both codified within the same part of the United States Code as 21 U.S.C. § 851.

[3] The failure to pursue plea negotiations aspect of the first claim was developed in supplemental submissions by defense counsel.

denies defendant's §2255 Motion.  The Discovery Motion, as supplemented, is granted in part and denied in part.  The Discovery Motion is granted with respect to defendant's requests for "any and all memoranda, hand books and other writings detailing the government's policies concerning the filing of 851 Informations" not previously produced and "any and all memoranda, notes or other writings concerning plea discussions or the filing of 851 Information in the underlying matter." The Discovery Motion, as supplemented, is denied with respect to defendant's request for "information concerning the identity of cases in which defendants were eligible for enhancement under 21 U.S.C. §851, but in which such enhancement was witheld."

## II.    BACKGROUND

On December 14, 2005, defendant was charged in two counts of a three-count Indictment as follows: Count 1 - Conspiracy to manufacture and distribute methamphetamine, in violation of 21 U.S.C. § 846; Count 2 - Manufacturing methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2. Gregory Pagano, Esq., was retained as defense counsel. At his arraignment on December 21, 2005, defendant pled not guilty. Defendant's trial was initially scheduled to commence on February 14, 2006, but was later continued to July 31, 2006.

On July 13, 2006, approximately two weeks before trial, Kenya Mann, the Assistant United States Attorney assigned to prosecute the case, filed an Information pursuant to 21 U.S.C. § 851 ("§ 851 Information"). The Information covered two prior convictions—a November 28, 1988, conviction for distribution of methamphetamine and an October 31, 1989 conviction for conspiracy to distribute P2P and to manufacture methamphetamine.  If convicted of the crimes charged in the Indictment—manufacturing or conspiring to manufacture in excess of 500 grams or more of methamphetamine—defendant's prior convictions, as stated in the § 851 Information,

would have made him a career offender and subjected him to a mandatory life sentence under 21 U.S.C. § 841(b)(1)(A).

Trial commenced on July 31, 2006.  On August 3, 2006, the jury found defendant guilty of the offenses charged in Counts 1 and 2 of the Indictment. The jury further found that defendant was responsible for manufacturing and conspiring to manufacture in excess of five hundred (500) grams of a mixture or substance containing a detectable amount of methamphetamine.[4]

Prior to sentencing, the United States Probation Office determined that the 1988 and 1989 convictions listed in defendant's § 851 Information were related.[5] Because the two convictions were related, defendant did not qualify as a career offender under Section 4B1.1 of the United States Sentencing Guidelines. That provision of the guidelines having been found inapplicable, the Presentence Report ("PSR") calculated a total offense level of 37 and a criminal history category of III, resulting in a guideline imprisonment range of 262 to 327 months. At the sentencing hearing on May 16, 2007, the Court ruled that defendant's prior convictions were related for purposes of the career offender guideline and adopted the guidelines calculations in the PSR. The Court also concluded that the two convictions were related for purposes of the enhanced penalties in 21 U.S.C. § 841(b)(1)(A), resulting in a mandatory minimum sentence of twenty (20) years imprisonment, not life imprisonment. The Court granted defendant's Motion

---

[4] For purposes of sentencing, the Court determined that the government proved that defendant was criminally responsible for 4.3 kilograms of methamphetamine. (Sentencing Tr. 7-8; Hr'g Tr. 47.)

[5] The offense which gave rise to the 1988 conviction—distribution of methamphetamine—formed part of the conspiracy to distribute P2P and to manufacture methamphetamine which was the basis of the 1989 conviction.

for Downward Departure and sentenced defendant to incarceration for 240 months—the twenty (20) year statutory mandatory minimum. Defendant did not file an appeal.

On September 25, 2007 defendant filed a *Pro Se* Motion to Modify Sentence, and Authority in Support Thereof, Brought Pursuant to Title 18, U.S.C. § 3582(c)(1)(B). In that motion, defendant argued that 18 U.S.C. § 3582(c)(1)(B) provided the Court with discretion to sentence him below the twenty (20) year statutory mandatory minimum sentence required by 21 U.S.C. § 841(a)(1) in light of defendant's poor health. Defendant also argued that his sentence was improper because the Court did not conduct a colloquy to determine whether he affirmed or denied his prior convictions, as required by 21 U.S.C. § 851(b). Thereafter, on October 15, 2007, defendant filed a *Pro Se* Motion to Stay Sentence of Imprisonment and for Release on Bond pending the Court's ruling on the Motion to Modify Sentence. The Court denied both motions by Order and Memorandum dated November 29, 2007.

Defendant filed the instant *pro se* Motion to Vacate, Set Aside, and/or Correct Sentence, and Authority in Support Thereof, Brought in Accordance with 28 U.S.C. § 2255 on January 31, 2008. Upon reviewing the motion, the government's response, *pro se* defendant's reply, and the government's sur-reply, the Court concluded that an evidentiary hearing would be necessary to resolve the issues raised by defendant, and, by Order dated March 26, 2008, the Court appointed counsel to represent the defendant. Thereafter, on April 8, 2008, defendant filed a *pro se* Motion for Discovery, Pursuant to Rule 6(a) of the Rules Governing Section 2255 Proceedings.[6]

---

[6] The Court ordered counsel for defendant to review the *pro se* motion for discovery and advise the court whether he wished to supplement the motion. In that same Order, the Court, citing Hall v. Dorsey, 534 F. Supp. 507, 508 (E.D. Pa. 1982), advised defendant that he had no right to hybrid representation and instructed him to present all future motions to defense counsel for filing.

Subsequent to the appointment of counsel, both defendant and the government filed a number of supplemental briefs and related documents which fleshed out the issues raised in defendant's *pro se* motions. The most significant of these filings were two declarations filed on July 8, 2008, one by Kenya Mann and one by Thomas Perricone, Chief of the Narcotics and Dangerous Drugs Section of the United States Attorney's Office for the Eastern District of Pennsylvania. Perricone was also the supervisor on defendant's case.

Counsel participated in several telephone conferences with the Court to discuss defendant's Discovery Motion and whether that motion should be decided prior to any evidentiary hearing. Following those conferences, the Court concluded that, in light of the significant privilege issues raised by the government with respect to the requested discovery, the appropriate course of action would be to proceed with the evidentiary hearing without discovery and determine after that hearing whether further discovery and a second hearing would be necessary.

By Order dated January 14, 2009, the Court scheduled the evidentiary hearing for February 24, 2009. Because the defendant's medical conditions prevented him from appearing at the hearing in person, the Court, by agreement, provided for his participation by video conference. Four witnesses testified at the February 24, 2009 hearing: defendant, Thomas Perricone, Kenya Mann, and Gregory Pagano, defendant's trial and sentencing counsel. At the conclusion of the hearing, the Court deferred ruling on defendant's motions.

## III. MOTION TO VACATE, SET ASIDE, AND/OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

Defendant's § 2255 motion, as supplemented, asserts two ineffective assistance of

counsel claims. With regard to the first claim, defendant argues two related issues: (1) that counsel was ineffective for advising him that he would receive a sentence of twenty years or more regardless of whether he pled guilty, which advice was allegedly incorrect to the extent that the withholding of an Information under 21 U.S.C. § 851, by the government, with or without a plea agreement, would have avoided the twenty-year mandatory minimum sentence arising from defendant's prior convictions, and (2) that counsel was ineffective for failing to pursue plea negotiations based on the government's withholding of a § 851 Information. Defendant's second claim alleges that counsel was ineffective for failing to communicate with him regarding the filing of a notice of appeal.[7]

The Sixth Amendment right to effective assistance of counsel attaches at the guilty plea stage to assist a defendant in deciding whether to plead guilty. United States ex rel. Caruso v. Zelinsky, 689 F.2d 435, 438 (3d Cir. 1982) ("[T]he decision to reject a plea bargain offer and plead not guilty is also a vitally important decision and a critical stage at which the right to effective counsel attaches."). The two-part standard of Strickland v. Washington, 466 U.S. 668 (1984), applies to "ineffective-assistance claims arising out of the plea process." Hill v. Lockhart, 474 U.S. 52, 57 (1985).

"Strickland v. Washington supplies the standard for addressing a claim of ineffective assistance of counsel." United States v. Smack, 347 F.3d 533, 537 (3d Cir. 2003) (citing Strickland, 466 U.S. at 687). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that

---

[7] In its response, the government argues that defendant's motion should be denied as an abuse of the writ. The Court disagrees, and reaches defendant's claims on the merits.

the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.  This standard requires a familiar two-part inquiry.

"First, the defendant must show that counsel's performance was deficient," that is, "that counsel's representation fell below an objective standard of reasonableness." Id. at 687–88.  The measure for counsel's performance under the first prong of Strickland is "whether counsel's assistance was reasonable considering all the circumstances" including "prevailing professional norms." Id. at 687–88. "Second, the defendant must show that [counsel's] deficient performance prejudiced the defense." Id. at 687.  The defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Under Strickland, defendants must establish both prongs of the standard for ineffective assistance of counsel, and an ineffective assistance of counsel claim will fail if either prong is not satisfied. Further, Strickland advises courts to resolve such claims on the prejudice prong lest "ineffectiveness claims . . . become so burdensome to defense counsel that the entire criminal justice system suffers as a result." Id. at 697. "[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

A.      **Claim 1: Erroneous Advice Regarding Defendant's Sentencing Exposure and Failure to Pursue Plea Negotiations**

In his *pro se* § 2255 motion, defendant states that he informed his trial counsel, Gregory

Pagano, "that he was interested in disposing of th[e] case without a trial" and that Pagano "advised [him] that, because of his criminal history, a sentence [of] twenty years would result from any plea of guilty, and that petitioner would not likely receive a much longer sentence if he proceeded to trial." (§ 2255 Mot. 3.) Defendant further claims that "[b]ased on this advice, [he] persisted in a plea of not guilty and proceeded to trial." (Id.) According to the defendant's motion, counsel failed to inform him that, absent the filing of a § 851 Information, his sentencing exposure would be lower—a ten year mandatory minimum sentence. Defendant claims that if he had been given this information, he would have pursued a plea agreement prior to the filing of the § 851 Information on July 13, 2006 and would have been eligible for a lower sentence.

Defendant's claim is based on the premise that the government would not have filed a § 851 Information prior to the entry of his plea—either of its own accord or at the request of the defendant as part of a negotiated plea agreement. It is this factual issue which dominated the evidentiary hearing on February 24, 2009 and which gave rise to defendant's related claim of deficient performance concerning trial counsel's failure to pursue plea negotiations.

### 1.     Relevant Background and Evidence

#### a.     Informations Under 21 U.S.C. § 851

Defendant was convicted of manufacturing methamphetamine and conspiring to manufacture methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) and 21 U.S.C. § 846. Section 841(a)(1) states that "it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense or possess with intent to manufacture, distribute, or dispense, a controlled substance." The penalties for violations of 21 U.S.C. § 841(a)(1) which involve 500 grams or more of a "mixture or substance containing a detectable

amount of methamphetamine, its salts, isomers, or salts of its isomers" are provided in 21 U.S.C. § 841(b)(1)(A). That section sets a mandatory minimum of ten years. 21 U.S.C. § 841(b)(1)(A). If a violation of § 841(a)(1), (b)(1)(A) occurs "after a prior conviction for a felony drug offense has become final," the mandatory minimum is twenty years. Id.  The applicable penalty becomes mandatory life imprisonment if the violation of § 841(a)(1), (b)(1)(A) occurs "after two or more prior convictions for a felony drug offense have become final." Id.  Defendant's conviction for conspiracy to manufacture methamphetamine in violation of 21 U.S.C. § 846 exposed him to "the same penalties as those prescribed" in 21 U.S.C. § 841(a)(1), (b)(1)(A).

Under 21 U.S.C. § 851, "[n]o person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless, before trial, or before entry of a plea of guilty, the United States attorney files an information with the court . . . stating in writing the previous convictions to be relied upon." Because defendant was charged with violating sections of the United States Code under the same part as 21 U.S.C. § 851, the government would only have been able to subject defendant to the higher penalties in 21 U.S.C. § 841(b)(1)(A) by filing a § 851 Information before defendant's trial or before the entry of a guilty plea. Under the statute, the decision of whether or not to file a § 851 Information is within the discretion of the United States Attorney.

### b. Ashcroft Memorandum

At all times relevant to this case, the United States Attorneys Office for the Eastern District of Pennsylvania followed Department of Justice policy regarding charging decisions. (Perricone Decl. ¶ 2.) That policy is laid out in the Ashcroft Memorandum of September 22,

2003 ("Ashcroft Memorandum"). (Id. ¶ 2 & Ex.)[8] According to Thomas Perricone, the Chief of

the Narcotics and Dangerous Drugs Section of the United States Attorneys Office for the Eastern

District of Pennsylvania who supervised defendant's prosecution, the "memorandum directs

federal prosecutors to charge the most serious, readily provable offense supported by the facts of

the case, along with all applicable statutory enhancements, including enhancements pursuant to

[21 U.S.C. §§ 841(b)(1)(A) and 851]." (Id. ¶ 2; Ashcroft Memo. 2.)

     With regard to § 851 Informations, the Ashcroft Memorandum states: "The use of

statutory enhancements is strongly encouraged, and federal prosecutors must therefore take

affirmative steps to ensure that the increased penalties resulting from specific statutory

enhancements, such as the filing of an information pursuant to 21 U.S.C. § 851 . . . , are sought in

all appropriate cases." (Ashcroft Memo. 4.) The memorandum notes that "[i]n many cases, . . .

the filing of such enhancements will mean that the statutory sentence exceeds the applicable

Sentencing Guidelines range, thereby ensuring that the defendant will not receive any credit for

acceptance of responsibility and will have no incentive to plead guilty." (Id.) Under such

circumstances, a prosecutor may obtain authorization from designated supervisors[9] "to forego the

filing of a statutory enhancement." (Id.) However, the memorandum provides that such action is

to be taken "*only* in the context of a negotiated plea agreement, and subject to [certain

enumerated] requirements . . . ." (Id. (emphasis in original).)

_____

   [8] The government attached the Ashcroft Memorandum to Perricone's Declaration. For
purposes of this Memorandum, the Court will cite to the Ashcroft Memorandum directly.

   [9] According to Perricone's declaration, the Chief of the Criminal Division and the Chief
of the Narcotics and Dangerous Drugs Section would have had to approve the withholding of a
§ 851 Information in defendant's case. (Perricone Decl. ¶ 3.)

The Ashcroft Memorandum directs United States attorneys who contemplate withholding a § 851 Information to "careful[ly] consider[] the factors set forth in Section 9-27.420 of the United States Attorneys' Manual [("USAM")]."[10] (Ashcroft Memo. 4.) That section of the USAM provides a list of "[c]onsiderations to be [w]eighed" by government attorneys when entering into plea agreements. (USAM § 9-27.420(A).) Relevant considerations include: "[1] The defendant's willingness to cooperate in the investigation or prosecution of others; [2] The defendant's history with respect to criminal activity; [3] The nature and seriousness of the offense or offenses charged; [4] The defendant's remorse or contrition and his/her willingness to assume responsibility for his/her conduct; [5] The desirability of prompt and certain disposition of the case; [6] The likelihood of obtaining a conviction at trial; [7] The probable effect on witnesses; [8] The probable sentence or other consequences if the defendant is convicted; [9] The public interest in having the case tried rather than disposed of by a guilty plea; [10] The expense of trial and appeal; [11] The need to avoid delay in the disposition of other pending cases; and [12] The effect upon the victim's right to restitution." (Id.)

### c.      Thomas Perricone Testimony

Thomas Perricone supervised defendant's prosecution. (Perricone Decl. ¶ 1.) At the February 24, 2009 hearing, Perricone testified that at the time the § 851 Information was filed in defendant's case he "believed, based on th[e] two prior convictions and based on the amount of drugs that were involved in the case, that [defendant] would be facing a mandatory life sentence." (Hr'g Tr. 47.) When asked if defendant's case was one which would qualify for the

---

[10] The relevant section of the United States Attorneys' Manual ("USAM") was admitted into evidence during the February 24, 2009 hearing as Defense Exhibit 2. For purposes of this Memorandum, the Court will cite to the USAM directly.

Ashcroft Memorandum's exception to the filing requirement for § 851 Informations, Perricone

replied, "Not as I saw it, no. . . . [I]t was a substantial amount of methamphetamine . . . possessed

by a recidivist. My recollection was he was on some sort of federal supervision for a previous

federal conviction for the same type of activity. . . . [H]e was seriously involved; he was not a bit

player; he was the supplier of the component chemicals, if my memory is correct. So, there . . .

would be no reason to make an exception in this case to filing an 851 [Information]." (Id. at 48,

63-64.)

When asked more specifically about the fact that defendant's presumed sentence—

mandatory life imprisonment—was higher than the guidelines range for his offenses, Perricone

described his policy in circumstances where the filing of a § 851 Information would result in a

life sentence. "[I]f somebody is facing a mandatory life sentence, we will frequently consider and

seriously consider and have in the past offered a plea agreement for a plea to twenty years

imprisonment, that is, . . . as part of the written negotiated plea agreement we would agree to file

an 851 [Information] listing only one of the prior convictions or, if we have previously filed one

listing two, we'll file an amended one, so that the mandatory minimum becomes twenty rather

than life in prison. . . . We would not go below twenty in those circumstances."

(Hr'g Tr. 49.) Perricone said he would have considered applying this policy in defendant's case,

but "would not, under any circumstances, based on what [he] kn[ew] about the case either then or

[at the time of the hearing] have agreed to a plea to less than twenty years absent cooperation and

substantial assistance." (Id. at 50.) In fact, he testified that he has never agreed to less than twenty

years in the absence of substantial assistance or a problem with the case, either legal or

evidentiary. (Id. at 60, 66.) Perricone could not recall any cases in which a defendant's advanced

age or poor health was the basis for the withholding of a § 851 Information, and he stated that he did not consider those factors to be relevant in defendant's case with regard to the filing of a § 851 Information. (Id. at 66.)

According to Perricone, the United States Attorneys under his supervision did not "routinely" withhold the filing of § 851 Informations (either by reducing two convictions to one or by foregoing the filing of a § 851 Information at all). (Hr'g Tr. 56.) To the contrary, "in ninety-nine percent of cases when someone is cooperating [that person has] to, for lack of a better word, eat all their criminal activity." (Id.) This means that even under a cooperating plea agreement, defendants have to plead to the most serious offense, accept responsibility for uncharged conduct, and agree to the filing of a § 851 Information. (Id.) Perricone stated that in some circumstances the prosecutor might agree to set a floor on sentencing exposure by withholding all or part of a § 851 Information and in other circumstances, the government might file the § 851 information setting the higher mandatory minimum but then move for a downward departure under 18 U.S.C. § 3553(e). (Id. at 56-57.) Both courses of action would be unusual. (Id. at 56.)

Perricone confirmed that, even with a twenty-year mandatory minimum, defendant would have qualified for the Ashcroft Memorandum's exception to the filing of § 851 Informations because the twenty-year sentence would have been higher than defendant's guideline sentencing range would have been with a three-level reduction in offense level for acceptance of responsibility, 188-235 months, creating a disincentive to a plea. (Id. at 59-60.) Perricone also emphasized that he would always be willing to consider a request by a defendant, although he might not agree to any given request. (Id. at 50-51, 63.)

### d. Kenya Mann Testimony

Kenya Mann testified that she did not consider withholding a § 851 Information in

defendant's case and confirmed that "there was [n]ever any question in [her] mind in this particular case as to whether or not [she] would file that 851 information." (Hr'g Tr. 9-10.) According to Mann, defendant's cooperation or his intention to enter a non-cooperating plea would not have changed her decision with regard to the filing of a § 851 Information.  In cases involving cooperation, she said she would file a § 851 Information and then, if warranted, move for a downward departure under section 5K1.1 of the United States Sentencing Guidelines. (Id. at 11-12, 13.)[11] On cross-examination, Mann testified that during the period that she worked as a federal prosecutor,[12] she could only remember one case in which the defendant was eligible for enhanced penalties, and she nevertheless withheld the filing of the § 851 Information. (Id. at 20-21.)

Mann also testified concerning her understanding of the Ashcroft Memorandum. She stated that she would not have agreed to withhold the filing of a § 851 Information because "in light of the Ashcroft Memo . . . I would have had to file [one] anyway; there was nothing I could have done or changed in that situation." (Hr'g Tr. 12-13.) Mann elaborated: "[It was] my

---

[11] Ms. Mann made no mention of a downward departure motion under 18 U.S.C. § 3553(e).

[12] Mann began working as a prosecutor in the Pennsylvania Attorney General's office in 1996. In 1999, she was cross-designated to the United States Attorneys Office for the Eastern District of Pennsylvania as a Special Assistant United States Attorney, splitting her caseload between federal and state narcotics cases. She was officially hired by the Department of Justice to work full time as an Assistant United States Attorney on April 1, 2002. She left the United States Attorneys Office in September of 2007. (Hr'g Tr. 7-8.) As a state prosecutor, Mann worked exclusively on narcotics cases. In 2002, when Mann became a full-time federal prosecutor, she continued to work exclusively on narcotics cases. However, she stated that she slowly began prosecuting other types of offenses such that only fifty percent of her caseload comprised of narcotics cases. (Id. at 8, 20-21.)

understanding [that § 851 Informations] were required and you had to file them and in my career I always did." (Id. at 13.) Mann added that she not aware of any exceptions to the filing of § 851 Informations. (Id.)

When asked about the timing of the filing of the § 851 information—approximately two weeks before trial—Mann explained that "it had to be filed before trial." (Hr'g Tr. 10.) She also stated that before that point, mid-July 2006, she had been focusing on other criminal trials and had not yet turned her attention to defendant's case. (Id.) On cross-examination, defense counsel asked Mann why she waited approximately six months after indictment to file the § 851 Information in this case despite the instruction in the Ashcroft Memorandum that "[a]s soon as is reasonably practicable, prosecutors should ascertain whether a defendant is eligible for any such statutory enhancement".  (Id. at 17-18 (quoting Ashcroft Memo. 4).) Mann reiterated that although she knew about defendant's prior convictions when she sought the indictment, she was busy with other cases until several weeks before defendant's trial. (Id. at 18.) She further admitted that she doesn't "file the 851 at the same time [as the indictment] or the next day; sometimes they're filed a month after; sometimes they're filed later on."[13] (Id. at 18.)

Finally, Mann testified with regard to her "plea discussions" with defendant's trial counsel. According to Mann, she first contacted Pagano in late June 2006 to ask about

---

[13] Perricone confirmed that there is "no typical timing" for the filing of § 851 Informations and that while he "always encourages people to file them as early as possible," that advice is for the purpose of ensuring that the prosecutors under his supervision do not forget to file the § 851 Informations before trial or the entry of a plea. (Hr'g Tr. 48.) Perricone also stated that prosecutors are instructed to always file § 851 Informations because they can always withdraw it or file an amended § 851 Information if necessary. (Id. at 62.)

defendant's interest in a cooperating plea arrangement. (Hr'g Tr. 11, 29-30.) Specifically, she

remembers saying something like "he's facing life, you know. Will he come in and talk to

DEA?" (Id. at 11.) To the best of Mann's recollection, Pagano stated in the first conversation that

he did not think defendant wanted to go to trial, but later informed Mann that defendant was not

interested in cooperating. (Id. at 11-12.)

###                 e.        **Gregory Pagano Testimony**

Gregory Pagano testified that he did not remember having any substantive plea

discussions with Mann because it was "[defendant's] position . . . that he did not wish to

cooperate and, therefore [Pagano] assumed that the case was one that had to go to trial." (Hr'g

Tr. 33.) Pagano testified that he thought Mann took a "fairly reasonable" approach to defendant's

case. (Id. at 34.) Pagano remembers Mann telling him that she did not want to see the defendant

go to jail for life and urging him to discuss the possibility of a cooperating plea with the

defendant. (Id.) Pagano consulted with defendant on this issue and testified that defendant made

it "abundantly clear that he did not wish to cooperate." (Id.) According to Pagano, the defendant

"was intent upon going to trial; he knew the cooperators . . . for many, many years, [and] did not

think they would be believable given their history, given what they were facing." (Id. at 40.)

Based on his understanding of defendant's wishes, Pagano did not pursue either a cooperating or

a non-cooperating plea agreement with the government. (Id. at 38-40.)

Pagano never asked Mann to withhold the filing of a § 851 Information in defendant's

case. (Hr'g Tr. 35, 39.) When asked why not, Pagano stated that he "didn't think it would be a

fruitful—or a reasonable—request if [defendant] wasn't cooperating." (Id.) He was not aware

that a Department of Justice policy—the Ashcroft Memorandum—allowed for the withholding of § 851 Informations in certain circumstances, but he was aware that it was possible for United States Attorneys to withhold the filing of § 851 Informations. (Id. at 39, 40-41.) Pagano testified that in his "experience[] in [criminal defense] practice in this district, typically the government will not withhold the filing of an 851 without a defendant's cooperation." (Id. at 40.)

Pagano confirmed his understanding at the time of trial that, with the filing of a § 851 Information, defendant's prior convictions required imposition of a mandatory sentence of life imprisonment under 21 U.S.C. § 841(b)(1)(A). (Hr'g Tr. 35, 39.)

## 2.      Deficient Performance

The Third Circuit has held that "a defendant has the right to make a reasonably informed decision whether to accept a plea offer" and that "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992). The Day court acknowledged the difficulty of articulating "what standard defense counsel must meet when advising their clients about the desirability of a plea bargain and, concomitantly, about sentence exposure." Id. Nevertheless, "familiarity with the structure and basic content of the Guidelines (including the definition and implications of career offender status) has become a necessity for counsel who seek to give effective representation." Id.

In this case, defendant has alleged that trial counsel was deficient in erroneously advising him with regard to his sentencing exposure and in failing to negotiate a plea agreement— cooperating or non-cooperating—whereby the government would withhold the filing of a § 851

Information. Defendant has presented some evidence to support each of these arguments.

Defendant argues that trial counsel's performance was deficient because he did not evaluate whether defendant's prior convictions were related or not, and, as a result, he did not accurately advise defendant with regard to his exposure at sentencing. This argument is based on Pagano's admission that, before and during trial, he was under the mistaken impression that defendant's two prior convictions were unrelated and would have made him eligible for a life sentence, under either U.S.S.G. § 4B1.1 or 21 U.S.C. § 841(b)(1)(A).[14] Defendant asserts that under Day, trial counsel's flawed understanding of defendant's sentencing exposure falls below an objectively reasonable standard. The Government, in response, points out that the right to effective assistance of counsel "does not guarantee an error-free or flawless performance by counsel." (Gov't Resp. to § 2255 Mot. 3 (citing Gov't of V.I. v. Bradshaw, 726 F.2d 115, 119 (3d Cir. 1984).) Under this line of reasoning, the government asserts that defense counsel's performance, while imperfect, was not beyond the scope of "prevailing professional norms."

Defendant also argues that trial counsel's performance was deficient because he failed to enter into plea discussions with the government based on the withholding of a § 851 Information. According to defendant, this failure falls below the standard of objectively reasonable conduct because plea negotiations are both standard practice and an important opportunity to obtain a favorable disposition in almost every criminal case. Defendant argues that trial counsel's failure

---

[14] The Court notes that the deficient advice alleged in the § 2255 motion—that "a sentence of twenty years would result from any plea of guilty"—conflicts with the testimony elicited at the hearing inasmuch as both government and defense counsel testified that, up until sentencing, they were under the mistaken impression that defendant's convictions were unrelated to one another and would have required a life sentence.

19

is particularly serious in this context because he should have pursued any possible means of avoiding the then-expected mandatory life sentence facing the defendant. Pagano explained his decision not to approach the prosecution about a § 851-withholding plea by stating that (1) he thought that, based on his understanding of the government's practice with regard to the filing of § 851 Informations, any attempt to negotiate such a plea would be unsuccessful in defendant's case because he refused to cooperate, and (2) he thought it would not be in accordance with his client's stated wishes to proceed to trial.

The Court need not rule on either of defendant's allegations of deficient performance because even assuming that trial counsel's performance was deficient, the Court concludes that defendant has failed to establish prejudice. In not ruling on the deficient performance prong of the standard for ineffective assistance of counsel, the Court follows the approach recommended by Strickland.

### 3.    Prejudice

To establish prejudice, defendant "need not prove with absolute certainty that he would have pleaded guilty, that the district court would have approved the plea arrangement, and that he therefore would have received a lesser sentence." Day, 969 F.2d at 45 n.8.  Moreover, "Strickland v. Washington does not require certainty or even a preponderance of the evidence that the outcome would have been different with effective assistance of counsel; it requires only 'reasonable probability' that that is the case." Id. (quoting Strickland, 466 U.S. at 693–94). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Day, 969 F.2d at 42 (quoting Strickland, 466 U.S. at 964.)  In this context, to satisfy the prejudice

20

inquiry, the defendant "must demonstrate that, but for his . . . attorney's alleged ineffectiveness, he would have likely received a lower sentence."  United States v. Booth, 432 F.3d 542, 547 (3d Cir. 2002).

In the Day case, the government made a plea offer which the defendant rejected before proceeding to trial. Accordingly, the prejudice inquiry required consideration of two contingencies— "whether [the defendant] would have accepted the alleged plea offer and whether the district court would have approved it." Day, 969 F.2d at 45. In this case, because the government never made a plea offer to the defendant, the Court must add a third consideration: whether the government would have accepted a plea agreement that included a provision to withhold a § 851 Information.[15]

In cases involving allegations of ineffective assistance of counsel in the guilty plea context, defendants often attempt to establish prejudice by offering a self-serving statement that they would have pled guilty had defense counsel properly advised them with regard to their sentencing exposure. See Day, 969 F.2d at 45-46. Accepting such statements at face value runs the risk that defendants will be able to gamble on a favorable outcome at trial and then fall back on a pre-existing guilty plea offer if their sentence is greater than predicted by trial counsel. See

---

[15] In his *pro se* filings defendant argued that this third inquiry is irrelevant because he would have pled guilty prior to the date on which the government filed the § 851 Information— July 13, 2006—thereby avoiding the twenty-year mandatory minimum. This argument is based on the mistaken premise that defendant would have been able to plead guilty without notifying the government beforehand. Under 21 U.S.C. § 851, the § 851 Information must be filed "before entry of a plea of guilty." Had defendant indicated his intention to plead guilty to the Court before July 13, 2006, the government would nevertheless have had an opportunity to file the § 851 Information prior to the entry of defendant's guilty plea at a change of plea hearing.

id. at 46 & n.9. For this reason, some courts have imposed a requirement that the defendant present some "objective evidence" that he would have pled guilty. See id. at 45-46 (collecting cases). In Day, the Third Circuit reserved ruling on whether to impose such a requirement, and the issue remains open in this circuit. Id. at 45; see also Boyd v. Waymart, ___ F.3d ___, 2009 WL 2342892, at *19-22 (3d Cir. July 31, 2009) (en banc) (Sloviter, J., dissenting and concurring in judgment) (analyzing Day and similar cases); Enright v. United States, 347 F. Supp. 2d 159, 166 (D.N.J. 2004) ("The Third Circuit has not affirmatively adopted or rejected an objective evidence requirement for demonstrating that a habeas petitioner would have accepted a plea offer, but it is clear that something more than a bare allegation is required.").

Even assuming (1) that the Court credits defendant's allegation that he would have pled guilty[16] and (2) that the Court would have accepted defendant's plea, defendant has failed to establish a reasonable probability of a different outcome with regard to the third consideration identified above—that there was a reasonable probability that the government would have agreed to withhold the filing of a § 851 Information.

The prosecutors involved in defendant's case—the trial attorney and the supervising attorney—stated that the government would not have withheld a § 851 Information in this case. Further, Perricone testified that he would only consider withholding a § 851 Information (resulting in a ten year mandatory minimum) in a case like defendant's if the defendant cooperated and provided substantial assistance and/or if there were a problem with the case

---

[16] The Court notes that Pagano's testimony contradicts this assumption insofar as he remembered that defendant "was intent upon going to trial." (Hr'g Tr. 40.)

which would have decreased the likelihood of conviction. Neither condition was present in this case.[17] Based on the prosecutors' evidence, even if defendant had pled guilty, the government would have filed a § 851 Information, subjecting the defendant to a twenty-year mandatory minimum under 21 U.S.C. § 841(b)(1)(A).

Defendant argues that the Court should not credit the prosecutors' testimony because, like the statements considered in Day, the statements in this case constitute self-serving "Monday morning quarterback[ing]" and are impossible to verify or rebut. (Hr'g Tr. 98-99, 102.) The Court agrees that the government's after-the-fact statements predicting what they would have done are inherently difficult to verify. The Court further notes that there is some evidence which supports defendant's position. Specifically, (1) Mann told Pagano that she did not want to see defendant go to jail for life; (2) defendant's case would have fallen under the exception identified in the Ashcroft Memorandum for the withholding of § 851 Informations because his guideline sentence with a three point reduction for acceptance of responsibility, 188-235 months, would have been lower than the 240 month mandatory minimum required by the § 851 Information; and (3) Perricone emphasized his willingness to consider any request or offer made by a defendant.[18]

_____

[17] Pagano testified that defendant was unwilling to enter into a cooperating plea agreement. (Hr'g Tr. 34, 40.) Perricone testified that he knew of no legal issues, evidentiary problems, or witness problems, which would have caused him to agree to withhold a § 851 Information in this case. (Id. at 70.)

[18] Defendant also argues that the government's failure to file a § 851 Information early in the case gives rise to an inference that they had some reason not to file it, i.e., that the government was interested in negotiating a non-trial disposition. (Hr'g Tr. 103-04.) Further, defendant argues that his health problems would have been a significant factor in the government's determination with regard to filing a § 851 Information. (Id. at 104-05.) The Court concludes that neither of these arguments are supported by the evidence presented at the hearing.

Nevertheless, the Court finds both Mann's and Perricone's testimony on this issue credible. (See Hr'g Tr. 48, 63-64 (Perricone's basis for saying that he would not have withheld a § 851 Information in defendant's case—the amount of drugs involved and the fact that defendant committed the offense while on supervised release for a prior narcotics conviction); id. at 9-10, 20-21 (Mann's statement that she has only withheld a § 851 Information in one case and would not have done so in this case).) Further, the Court credits Perricone's testimony concerning the conditions under which he would agree to withhold a § 851 Information—substantial cooperation or difficult conviction—and the fact that, in any event, such cases would be unusual. Finally, the government's position is corroborated by the Ashcroft Memorandum, particularly its overarching directive to "charge and pursue the most serious, readily provable offense or offenses that are supported by the facts of the case." (Ashcroft Memo. 2.) For these reasons, the Court finds that the government would have filed a § 851 Information in this case before the entry of any guilty plea by the defendant.

Because the result in this case—a twenty year mandatory minimum sentence—would have been the same even if defendant had pled guilty prior to trial, the Court concludes that any deficient performance on the part of trial counsel which caused defendant to proceed to trial instead of pleading guilty did not prejudice the defendant.

**B.      Claim 2: Failure to File a Notice of Appeal**

Defendant argues that trial counsel provided ineffective assistance by not filing an appeal and by failing to properly consult with the defendant on whether an appeal should be taken. (§ 2255 Mot. 8.)

24

### 1.     Relevant Background and Evidence

#### a.     Gregory Pagano Testimony

Gregory Pagano stated that he spoke with the defendant concerning his right to appeal some time after defendant's conviction and before his sentencing. (Hr'g Tr. 35-36.) He remembered having at least two conversations on the issue of defendant's appeal. (Id. at 37.) In those conversations, he told the defendant that he did not think there were any meritorious issues for appeal and that he "was not going to file an appeal." (Id. at 36.) According to Pagano's testimony, he explained to the defendant that he "thought it was a pretty . . . clean trial"; that he "didn't see any errors that were committed on [his] part, Ms. Mann's part, or the Court's part"; and that the trial "primarily [involved] a question of the cooperators' credibility" which would be difficult to challenge on appeal. (Id. at 36-37.) When asked, Pagano stated that he did not recall what defendant's position was regarding appeal. (Id.)

Pagano had difficulty remembering whether he had any conversations about defendant's appeal after sentencing. (Hr'g Tr. 41.) He summarized his recollection by stating: "I do remember speaking to him about it absolutely prior to sentencing, and I think even in the courtroom after he was sentenced maybe." (Id.)  According to Pagano, the content of this last conversation "would have been the same advice [as before]—that [he] didn't see any issues for appeal." (Id.) When asked about defendant's reaction to the advice, Pagano stated: "I don't recall. I don't think he was happy with my opinion." (Id. at 42.)

#### b.     Defendant's Testimony

Defendant testified that he recalled only one conversation with Pagano concerning the

filing of an appeal—a conversation which occurred shortly after the jury found him guilty on August 3, 2006. (Hr'g Tr. 83.) Defendant testified that, in that "very short" conversation, Pagano told him he "would look into" filing an appeal. (Id.) Defendant then said he told Pagano he "wanted to file an appeal, after talking with [his] family." (Id.) Defendant did not specifically remember any other conversations with Pagano about filing an appeal, but did think that they "discussed it a little bit"—they had a "very limited" discussion—at the sentencing hearing. (Id. at 83-84, 86.)

On cross-examination, defendant confirmed that, during the post-verdict conversation, Pagano informed him that the time for filing an appeal would not accrue until after sentencing and that it was not the appropriate time to discuss filing an appeal. (Hr'g Tr. 83, 86.) Defendant also admitted that Pagano advised him that there were no appealable issues. (Id. at 86.) Nevertheless, at the hearing on his § 2255 motion, defendant testified that it was his desire to appeal his conviction. (Id. at 85.)

### 2.    Deficient Performance

If a defendant asks his attorney to file an appeal and his attorney fails to do so, the attorney's performance is ineffective under *Strickland.* With regard to objectively reasonable representation, "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). "Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes." Id.

Where a defendant does not expressly ask counsel to file an appeal, courts engage in a different analysis. Specifically, a court must determine whether counsel breached a constitutional duty to *consult* with the defendant regarding appeal. See Harrington v. Gillis, 456 F.3d 118, 125 (3d Cir. 2006). A duty to consult with the defendant regarding appeal arises in two situations: (1) "when there is reason to think . . . that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) [when there is reason to think] that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. at 480; see also Solis v. United States, 252 F.3d 289, 293 (3d Cir. 2001); Lewis v. Johnson, 359 F.3d 646 (3d Cir. 2004).

With regard to this standard, the Supreme Court has explained:

> Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.

Flores-Ortega, 528 U.S. at 480. The Court also noted that "[w]e expect that courts . . . will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal." Id. at 481. Further, the Third Circuit has stated that where "counsel is unsure about [a defendant's wishes . . . , any doubt . . . should [be] resolved in favor of appeal." Hodge v. United States, 554 F.3d 372, 380 (3d Cir. 2009).

The consultation itself must not be deficient. Hodge, 554 F.3d at 380. Indeed, "an attorney may not speak cursorily with a client about an appeal and call it a 'consultation.'" Id.

For purposes of applying the Strickland standard in the notice of appeal context, Flores-Ortega defines consulting as "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Flores-Ortega, 528 U.S. at 478.

The first issue before the Court is whether defendant told trial counsel to file an appeal. According to the defendant, a few days after the jury verdict, he told Pagano that he "wanted to file an appeal, after talking with [his] family." (Hr'g Tr. 83.) Although defendant could not remember all of the details of his discussions with Pagano concerning the filing of an appeal, the Court finds his statement—that he "wanted to file an appeal, after talking with [his] family."—to be credible. Pagano informed the defendant at that time that an appeal could not be taken until after sentencing. (Id. at 83, 86.) In addition, Pagano advised the defendant that he did think there were any meritorious issues for appeal. (Id. at 36-37.) Based on this evidence, the Court concludes that, although the defendant expressed an interest in filing an appeal shortly after the jury returned its verdict, he did not communicate a definitive intent to appeal or specifically instruct trial counsel to file a notice of appeal after sentencing over nine months later.

The Court must next inquire whether the circumstances of this case gave rise to a duty to consult with defendant regarding his appeal. Under Flores-Ortega, a duty to consult arises "when there is reason to think . . . that th[e] particular defendant reasonably demonstrated to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. at 480. Defendant's testimony on this issue establishes that defendant expressed, at the very least, an interest in filing an appeal shortly after the jury verdict. Pagano's testimony was not to the contrary: he could not remember what

28

defendant told him, but stated that he didn't think hearing Pagano's opinion with regard to the absence of appealable issues made defendant "happy." The Court accepts defendant's testimony on this issue and concludes that "defendant reasonably demonstrated to counsel that he was interested in appealing."

Finally, the Court must determine if counsel's performance with regard to his duty to consult was deficient. Pagano testified credibly concerning the advice he gave to defendant on the absence of appealable issues, and on cross-examination defendant confirmed that he received this advice. This satisfies the first half of the Flores-Ortega definition of consultation—"advising the defendant about the advantages and disadvantages of taking an appeal." With regard to the second half of the definition—"making a reasonable effort to discover the defendant's wishes"—Pagano's testimony establishes that his performance was lacking. He stated that he told the defendant he "was not going to file an appeal" and did not recall defendant's position regarding appeal. (Hr'g Tr. 36.) Further, there is no evidence of what was said about an appeal to defendant after sentencing despite the fact that defendant had earlier expressed an interest in appealing his conviction. Under these circumstances, the Court concludes that counsel's performance fell below objectively reasonable standards. See Hodge, 554 F.3d at 380.

### 3.    Prejudice

To establish prejudice based on counsel's failure to perfect a direct appeal, a defendant must demonstrate "that, but for counsel's deficient conduct, he would have appealed." Flores-Ortega, 528 U.S. at 486. Where an attorney fails to perfect a direct appeal, despite a request from the defendant to do so, such prejudice is presumed to exist.  See id. at 485 (citing

Rodriquez v. United States, 395 U.S. 327, 330 (1969)); Harrington v. Gillis, 456 F.3d 118, 132 (3d Cir. 2006).  This is so because "[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice."  Strickland, 466 U.S. at 692.

The presumption does not extend to cases where defense counsel's deficient performance consists of a failure to consult with his client about an appeal. In such cases, defendant must establish that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Flores-Ortega, 528 U.S. at 484. With regard to this inquiry, "evidence that there were non-frivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant." Id. at 485. The Flores-Ortega Court recognized that these factors are "not wholly dissimilar from [those] used to determine whether counsel performed deficiently in the first place." Id. at 485-86. Nevertheless, the two inquiries are not "co-extensive." Id. at 486.

The Court concludes that, while the deficient performance and prejudice inquiries are not "co-extensive," the evidence in this case that supported the Court's deficient performance conclusion also supports a conclusion with regard to prejudice. Defendant expressed a desire to appeal shortly after the jury verdict.  The fact that defendant soon thereafter filed *pro se* motions with the Court to address certain issues substantiates his claim that he would have pursued an appeal if assisted by effective counsel. Although defendant has not identified any specific appealable issues, there is no requirement that he do so. The Supreme Court has emphasized that "a defendant's inability to 'specify the points he would raise were his right to appeal reinstated,' will not foreclose the possibility that he can satisfy the prejudice requirement." Flores-Ortega,

528 U.S. at 486 (quoting Rodriguez, 395 U.S. at 330). Under the circumstances of this case, the

Court concludes that "but for counsel's deficient conduct, [defendant] would have appealed." Id.

The remedy for a violation of the right to effective assistance of counsel with respect to

the filing of an appeal is the reinstatement of the defendant's appellate rights. Solis v. United

States, 252 F.3d 289, 294-95 (3d Cir. 2001). Because the Court has concluded that trial counsel's

ineffectiveness deprived defendant of the right to file an appeal, defendant is entitled to a "*nunc*

*pro tunc* direct appeal." Id.

## IV.    MOTION FOR DISCOVERY PURSUANT TO RULE 6(a) OF THE RULES GOVERNING SECTION 2255 PROCEEDINGS, AS SUPPLEMENTED

Defendant's *pro se* Motion for Discovery, Pursuant to Rule 6(a) of the Rules Governing

Section 2255 Proceedings, as supplemented, was prompted by the government's assertions, it its

response to the § 2255 motion, that it would have filed a § 851 Information in defendant's case

regardless of whether or not he pled guilty and that it routinely files § 851 Informations where

applicable. (Disc. Mot. 1.) To rebut those assertions, defendant requests three categories of

discovery: (1) "a list of all criminal cases prosecuted in the Eastern District of Pennsylvania

between the years 2002 and 2006 in which the government did not file [§ 851 Informations],

although the defendants in those cases had at least one prior felony drug conviction." (Disc. Mot.

4); (2) "any and all memoranda, handbooks and other writings detailing the government's

policies concerning the filing of § 851 Informations"  (Supp. Disc. Memo. 1); and (3) "any and

all memoranda, notes or other writing concerning plea discussions or the filing of 851

Information in the underlying matter" (Supp. Disc. Memo. 1.) The Court will address each

31

category separately.

In the Discovery Motion, as supplemented, defendant stated the reasons for his request and the scope of his request. He argued that his request is supported by good cause because he "may be required to establish, to the Court's satisfaction, that the Government would not have filed [a § 851 Information] had he entered an 'open plea' prior to trial." (Disc. Mot. 4.) The government responded by arguing that defendant's requests were "beyond the scope of proper discovery and violate the work product doctrine." (Gov't Resp. to Disc. Mot. 1.) Specifically, the government asserted that under the prevailing rules of procedure, parties are only required to produce documents already in existence, not create new documents, such as the statistical compilations requested by the defendant. (Id. at 4.) Further, the government claimed that the requested information is protected from discovery by the work product doctrine. (Id. at 5-6.)[19]

Upon consideration of defendant's § 2255 motion and the government's response to the § 2255 motion, the Court determined that an evidentiary hearing would be necessary "to address, *inter alia*, petitioner's claim that his attorney was ineffective for failing to file a notice of appeal, and the government's position that it would have filed an Information under 21 U.S.C. § 851 with or without a guilty plea." (Order of March 21, 2008). With respect to the discovery motion, the Court determined that the concerns raised by the government were significant, requiring

---

[19] The government also argued that the requested discovery is not relevant because "[g]eneral Department of Justice statistics and policies do not prove what happened . . . in this particular case." (Gov't Resp. to Disc. Mot. 5.) The Court rejects this argument. The requested discovery is at least somewhat relevant insofar as it would tend to support or refute the prosecutors' after-the-fact statements with regard to whether or not they would have filed a § 851 information in defendant's case.

careful consideration of defendant's need for the requested information.

To balance defendant's need for discovery against the government's privilege interests, the Court bifurcated the evidentiary hearing and deferred ruling on defendant's discovery motion. The Court informed the parties that, after the hearing, the Court would determine whether further discovery and a second hearing would be necessary. For the reasons stated below, the Court denies defendant's motion with regard to the first category of discovery, but grants defendant's motion with regard to the second and third categories.  Defendant is granted leave to file a motion for reconsideration of this Memorandum and Order if warranted by newly discovered evidence produced by the government.  If such motion is filed, the Court will determine whether a second evidentiary hearing is necessary.

A.    **Legal Standard**

Rule 6(a) of the Rules Governing Section 2255 Proceedings provides, in relevant part, that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law."[21]   A party requesting discovery under the rule "must provide reasons for the

---

[21]In the supplemental memorandum, defendant argues that he would also be entitled to the requested discovery under Fed. R. Crim. P. 17(c). (Supp. Disc. Mot. 3 n.5 (citing United States v. Nixon, 418 U.S. 700, 701 (1974).) This argument is meritless. The Rules Governing Section 2255 Proceedings specifically give district courts discretion in authorizing discovery "under the Federal Rules of Criminal Procedure or Civil Procedure." Rule 6(a) Gov. § 2255 Proceedings (stating that a judge "may" authorize discovery). The language of Rule 6(a) would be surplussage if defendant were otherwise entitled to discovery under the Federal Rules of Criminal Procedure. Cf. Peterkin v. Horn, 30 F. Supp. 2d 513, 516 (E.D. Pa. 1998) (citing Bracy, 520 U.S. 899) ("[A] habeas petitioner, unlike the civil litigant in federal court, is not entitled to discovery as a matter of ordinary course.").

request[,] must . . . include any proposed interrogatories and requests for admission, and must specify any requested documents." Rule 6(b) Gov. § 2255 Proceedings.

The Supreme Court has stated that "good cause" exists under Rule 6(a) "where specific allegations before the court show reason to believe that the petitioner may, if facts are fully developed, be able to demonstrate that he is . . . entitled to relief. . . ." Bracy v. Gramley, 520 U.S. 899, 908-09 (1997) (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)). This standard limits discovery to those cases where a defendant has made a preliminary showing that requested discovery will tend to support his entitlement to relief. See Deputy v. Taylor, 19 F.3d 1485, 1493 (3d Cir. 1994); see also United States v. Roane, 378 F.3d 382, 402-03 (4th Cir. 2004). Rule 6(a) gives district courts discretion in granting or denying a defendant's request for discovery. Taylor, 19 F.3d at 1493; Mayberry v. Petsock, 821 F.2d 179, 185 (3d Cir. 1987).

In the habeas context, courts have denied discovery requests on the ground that the defendant failed to make a showing that the materials requested would contain relevant evidence. See Phillips v. Stickman, 298 F. App'x 135, 137 (3d Cir. 2008) (affirming district court's denial of discovery where defendant had made no showing that evidence existed to support his claim); United States v. Durrani, 115 F. App'x 500 (2d Cir. 2004) (affirming denial of discovery request where petitioner had not made a showing that "pertinent evidence lay[] hidden in the government's files"). Courts have also denied discovery requests where the requested information, while relevant, would be of little value in ruling on the defendant's claims.  See Levi v. Holt, 192 F. App'x 158, 162 (3d Cir. 2006) (affirming district court's denial of discovery on claim that a disciplinary hearing officer was favoring the Bureau of Prisons over prisoners

because records showing a pattern of ruling in favor of the Bureau of Prisons would not be enough to establish bias); United States v. Wilson, 901 F.2d 378, 382 (4th Cir. 1990) (affirming denial of discovery request because "[i]t was reasonable for [the judge] to conclude that the requested discovery, if granted, would add little or nothing to the proceedings").

### B. Information on the Government's Withholding of § 851 Informations in Other Eligible Cases

Defendant's first request is "a list of all criminal cases prosecuted in the Eastern District of Pennsylvania between the years 2002 and 2006 in which the government did not file [§ 851 Informations], although the defendants in those cases had at least one prior felony drug conviction." Defendant seeks this information to disprove the government's evidence concerning its policy of "routinely" filing § 851 Informations in cases where the defendant has qualifying prior convictions.

The government correctly points out that, to the extent that defendant is seeking a list or other statistical summary that does not already exist, such a request is beyond the scope of Fed. R. Civ. P. 34 governing the production of documents. Under that rule, "[a] party is not required 'to prepare, or cause to be prepared,' new documents solely for . . . production." Alexander v. F.B.I., 194 F.R.D. 305, 310 (D.D.C. 2000) (quoting Rockwell Int'l Corp. v. H. Wolfe Iron & Metal Co., 576 F. Supp. 511, 511 (W.D. Pa. 1983)). However, the rule would not preclude the production of existing documents relating to those cases where the government has withheld the filing of § 851 Informations. Accordingly, the Court will assess whether defendant should be provided with the records associated with the requested category of cases.

All of the evidence before the Court on the government's policy of filing § 851

Informations in eligible cases is essentially consistent. Perricone, Mann, and Pagano all testified that the government typically files § 851 Informations in eligible cases. Perricone stated that such Informations would be filed in ninety-nine percent of cases and that he would only consider withholding a § 851 Information (resulting in a ten year mandatory minimum sentence) in cases involving cooperation and substantial assistance or cases with legal or evidentiary problems. Both Mann and Pagano testified that they thought the filing of § 851 Informations was mandatory.  Although their understanding appears to have been incorrect because the government has discretion under 21 U.S.C. § 851 not to file an Information, it supports Perricone's testimony that the withholding of § 851 Informations was a rare occurrence.

The prosecutors in this case testified credibly with regard to the government's practice of filing § 851 Informations in eligible cases, and defendant has made no showing that the requested discovery would undermine that testimony. Further, information about other cases would be of little, if any, help to the defendant in proving the central question posed by his ineffective assistance of counsel claim—what the government would have done in his case. This is because the government's decision in any given case is discretionary and entirely dependant on the facts of the particular case.

Because defendant has made no showing that the requested discovery would rebut the government's evidence concerning its policy of filing § 851 Informations and because evidence of the government's actions in other cases would be of little or no evidentiary value in determining what the government would have done in this case, the Court denies defendant's request for discovery with regard to the government's practice of filing or withholding § 851

36

Informations in other cases.

### C.    Written Materials Detailing the Government's Policies for the Filing of § 851 Informations

The second category of discovery requested by the defendant consists of "any and all memoranda, handbooks and other writings detailing the government's policies concerning the filing of § 851 Informations." The government argues that these materials are not relevant because "[g]eneral Department of Justice . . . policies do not prove what happened . . . in this particular case." (Gov't Resp. to Disc. Mot. 5.) The Court rejects this argument concerning the relevance of policy documents. Such documents are relevant insofar as they would tend to support or refute the prosecutors' after-the-fact statements with regard to whether or not they would have filed a § 851 information in defendant's case.

On this issue, the Court notes that the government agreed to provide the defendant with copies of any policy statements it intended to offer into evidence at the hearing. (Gov't Resp. to Disc. Mot. 5.) The Court further notes that, prior to the hearing, the government provided the defendant with (a) a URL for the United States Attorney's Manual, which sets forth general Department of Justice policies and (b) a copy of the Ashcroft Memorandum, which was attached as an exhibit to the Declaration of Thomas Perricone, filed on July 8, 2008.

At the hearing, Mann testified that she knew of no written policies, other than the Ashcroft Memorandum, on the subject of filing § 851 Informations.  (Hr'g Tr. 15, 26.) Perricone was not specifically asked about the existence of written policies other than the Ashcroft Memorandum, but when asked if he was "aware of any office policy in the U.S. Attorney's Office for the Eastern District of Pennsylvania regarding the filing of [§] 851 Informations," he

immediately referenced the Ashcroft Memorandum as the relevant policy document. (Id. at 46.) Perricone also stated that the practice he described in his testimony with regard to filing § 851 Informations in eligible cases was not contained in any existing written policy. (Id. at 68.) Thus, it appears that the government has already complied with that portion of defendant's discovery motion which requests copies of the government's written policies.

The Court concludes that the government's policies with regard to the filing of § 851 Informations in eligible cases are relevant to defendant's claims and the government has stated no valid reason why such policies should not be produced. Thus, the Court grants defendant's request for "any and all memoranda, handbooks and other writings detailing the government's policies concerning the filing of § 851 Informations" to the extent that such documents have not already been produced.

### D.   Government Materials Concerning Plea Discussions or the Filing of a § 851 Information in the Defendant's Case

The third category of discovery sought by the defendant includes "any and all memoranda, notes or other writing concerning plea discussions or the filing of 851 Information in the underlying matter." The government argues that these materials are protected from disclosure under the work product doctrine.

For defendants in criminal cases, Federal Rule of Criminal Procedure 16(a)(2) precludes "the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." For civil cases, Federal Rule of Civil Procedure 26(b)(3) provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative

38

(including the other party's attorney . . . )." To the extent that such materials are discoverable,

"the court . . . must protect against disclosure of the mental impressions, conclusions, opinions,

or legal theories of a party's attorney or other representative concerning the litigation." These

rules codify what is generally referred to as the work product doctrine.

The government argues that "any internal memoranda, notes or writings reflecting the

government's intentions, mental impressions, or deliberations with respect to this case clearly fall

within the work product doctrine." (Gov't Resp. to Disc. Mot. 6.) For support, the government

cites United States v. Nobles, 422 U.S. 225 (1975), which states that the "role [of the work

product doctrine] in ensuring the proper functioning of the criminal justice system is . . . vital."

Id. at 238. The Court agrees with the government that the materials requested by the defendant

fall within the definition of attorney work product. Nevertheless, the Court concludes that an

exception to the work product doctrine applies in this case to allow discovery.

In Nobles, the case cited by the government, the Supreme Court recognized that "the

work-product doctrine is not absolute [and that] [l]ike other qualified privileges, it may be

waived." 422 U.S. at 239. One such instance of waiver occurs where a party "attempts to make

testimonial use of" the otherwise protected materials. Id. at 240 n.14. A party, by using one of its

attorneys or agents as a witness, "waive[s] the [work product] privilege with respect to matters

covered in [that witness's] testimony" and "the normal rules of evidence come into play with

respect to cross-examination and production of documents." Id. at 239-40 & n.14.

In this case, the government called Mann and Perricone as witnesses to testify about their

decision to file a § 851 Information in defendant's case and their position on withholding such an

Information pursuant to a plea agreement.  In doing so, the prosecutors placed their thought

processes and litigation strategy at issue.  Under such circumstances, the Court concludes that the government waived its work product privilege with regard to matters discussed in the prosecutors' testimony. Because these materials are not protected from discovery by the work product doctrine, the Court grants defendant's request for "any and all memoranda, notes or other writing concerning plea discussions or the filing of 851 Information" in this case.

## V.        A CERTIFICATE OF APPEALABILITY WILL ISSUE

A certificate of appealability shall issue only if the defendant establishes "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also 28 U.S.C. § 2253(c).  The Court concludes that defendant has made such a showing with respect to the claim in his § 2255 Motion that trial counsel was ineffective for failing to properly advise the defendant with regard to his sentencing exposure and for failing to pursue plea negotiations with the government.  Thus, a certificate of appealability will issue as to that claim.

## VII.      CONCLUSION

For all the foregoing reasons, the Court grants in grants in part and denies in part defendant's *pro se* Motion to Vacate, Set Aside, and/or Correct Sentence, and Authority in Support Thereof, Brought in Accordance with 28 U.S.C. § 2255. The Motion is granted with respect to the claim of ineffective assistance of counsel for failure to consult with defendant regarding his direct appeal, and defendant is granted leave to file and serve a notice of appeal *nunc pro tunc* within thirty (30) days. The Motion is denied with respect to the claim of ineffective assistance of counsel for failure to properly advise the defendant with regard to his

sentencing exposure and for failure to pursue plea negotiations with the government. On that claim, a certificate of appealability will issue.

The Court also grants in part and denies in part *pro se* Petitioner's Motion for Discovery, Pursuant to Rule 6(a) of the Rules Governing Section 2255 Proceedings, as supplemented. That motion is granted with respect to defendant's requests for "any and all memoranda, handbooks and other writings detailing the government's policies concerning the filing of 851 Informations" not previously produced and "any and all memoranda, notes or other writings concerning plea discussions or the filing of 851 Information in the underlying matter." The Discovery Motion, as supplemented, is denied with respect to defendant's request for "information concerning the identity of cases in which defendants were eligible for enhancement under 21 U.S.C. § 851, but in which such enhancement was withheld." To the extent that the Court has granted defendant's discovery motion, the government shall provide defendant and the Court with copies of the requested materials within ten (10) days. Further, defendant is granted leave to file within twenty (20) days a motion for reconsideration of this Memorandum and Order if warranted by the newly discovered evidence produced by the government.

An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | **NO. 05-709-1** |
| **v.** | : | |
| | : | **CIVIL ACTION** |
| **JOHN PURCELL** | : | **NO. 08-473** |
| **a/k/a "Jack Purcell"** | : | |

### O R D E R

**AND NOW**, this 21st day of October, 2009, upon consideration of Petitioner's *Pro Se*

Motion to Vacate, Set Aside, and/or Correct Sentence, and Authority in Support Thereof,

Brought in Accordance with 28 U.S.C. § 2255 (Document No. 130, filed January 30, 2008), and

the related submissions of the parties, and Petitioner's Motion for Discovery Pursuant to Rule

6(a) of the Rules Governing § 2255 Proceedings (Document No. 137, filed April 8, 2008), as

supplemented, and the related submissions of the parties, following a hearing on February 24,

2009, for the reasons stated in the attached Memorandum, **IT IS ORDERED** that Petitioner's

*Pro Se* Motion to Vacate, Set Aside, and/or Correct Sentence, and Authority in Support Thereof,

Brought in Accordance with 28 U.S.C. § 2255 is **GRANTED IN PART** and **DENIED IN**

**PART**, as follows:

1.  That part of the Motion in which defendant claims ineffective assistance of counsel for

failure to consult with defendant regarding his direct appeal is **GRANTED**, and defendant is

granted leave to file and serve a notice of appeal *nunc pro tunc* within thirty (30) days;

2.  That part of the Motion in which defendant claims ineffective assistance of counsel for

failure to properly advise defendant with regard to his sentencing exposure and for failure to

pursue plea negotiations with the government is **DENIED**; and,

3. The Court **ISSUES** a certificate of appealability with respect to the claim in the § 2255 Motion that trial counsel was ineffective for failing to properly advise defendant with regard to his sentencing exposure and for failing to pursue plea negotiations with the government.

**IT IS FURTHER ORDERED** that *pro se* petitioner's Motion for Discovery, Pursuant to Rule 6(a) of the Rules Governing § 2255 Proceedings, as supplemented, is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** with respect to defendant's request for "any and all memoranda, hand books and other writings detailing the government's policies concerning the filing of 851 Informations" not previously produced and "any and all memoranda, notes or other writings concerning plea discussions or the filing of 851 Information in the underlying matter." The Discovery Motion is **DENIED** with respect to defendant's request for "Information concerning the identity of cases in which defendants were eligible for enhancement under 21 U.S.C. § 851, but in which such enhancement was withheld. To the extent that the Court has granted defendant's Discovery Motion, the government shall **PROVIDE** defendant and the Court with copies of the requested materials within ten (10) days. Defendant is granted leave to file within twenty (20) days a motion for reconsideration of this Memorandum and Order if warranted by the newly discovered evidence produced by the government.

**BY THE COURT:**

_____

**JAN E. DUBOIS, J.**

43